IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GREGORY KANE,                                      *

    Plaintiff,                                 *

      v.                                     *          Civil Action No. RDB-11-03719

UPS PENSION PLAN BOARD                             *
OF TRUSTEES,                                       *

    Defendant.                                 *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Gregory Kane ("Kane") brings this action against UPS Pension Plan Board

of Trustees ("the Board") for alleged violations of the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*[1]  Specifically, Kane alleges that,

when the Board calculated his pension benefits, it improperly refused to credit the hours he

worked while transitioning between part-time and full-time employment for United Parcel

Service ("UPS") in April of 1984.  Presently pending before this Court are the parties' cross-

motions for summary judgment (ECF Nos. 33 & 34).  In addition, Kane has filed a Motion

to Correct Filing (ECF No. 46) in order to supplement the attachment to his original

Opposition and Reply brief (ECF No. 37).  The parties' submissions have been reviewed

and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011).  For the reasons that

---

[1] As is common practice, this Court will refer to sections of ERISA by the internal section numbers of the
statute itself rather than the United States Code.  *Cf. Coyne & Delaney Co. v. Blue Cross & Blue Shield of Va.*, 102
F.3d 712, 714 (4th Cir. 1996).  Citations, however, are to the United States Code for purposes of quick
reference.

follow, Plaintiff Gregory Kane's Motion to Correct Filing (ECF No. 46) is DENIED. In addition, Plaintiff Gregory Kane's Motion for Summary Judgment (ECF No. 33) is DENIED, and Defendant UPS Pension Plan Board of Trustees' Motion for Summary Judgment (ECF No. 34) is GRANTED.

## BACKGROUND

This Court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### I.     The UPS Pension Plan

UPS is a well-known United States package delivery company operating in Maryland and nationwide. Def.'s Resp. Pl.'s Statement Undisputed Material Facts ¶ 1 (hereinafter, "Def.'s Resp. Pl.'s SUMF"), ECF No. 34-2. UPS sponsors the UPS Pension Plan (the "Plan") in order to provide its part-time employees with retirement benefits. *Id.* ¶¶ 2, 3. The Plan qualifies as an "employee benefit plan" subject to the requirements of ERISA. *Id.* ¶ 2. Defendant UPS Pension Plan Board of Trustees ("the Board") administrates the Plan and is the "fiduciary" of the Plan in accordance with ERISA § 3, 29 U.S.C. § 1002. Pl.'s Resp. Def.'s Statement Undisputed Material Facts ¶ 3 (hereinafter, "Pl.'s Resp. Def.'s SUMF"), ECF No. 37-1;[2] *see also* Def.'s Resp. Pl.'s SUMF ¶ 4.

---

[2] Plaintiff originally filed a Response to Defendant's Statement of Undisputed Facts on July 26, 2013 as an attachment to his Response in Opposition (ECF No. 37). Subsequently, Plaintiff moved to add additional attachments, *see* Pl.'s Mot. Correct Filing, ECF No. 46, but the Response to Defendant's Statement of Undisputed Facts remained unchanged.

Under the Plan, part-time UPS employees earn retirement benefits based on "service credit" for "covered employment." Pl.'s Resp. Def.'s SUMF ¶¶ 11, 13-14. During Kane's part-time employment, service credit was awarded in the following manner:

> 0-374 hours worked = 0 months service credit
> 375-500 hours worked = 6 months service credit
> 501-750 hours worked = 9 months service credit
> More than 750 hours worked = 1 year service credit

Def.'s Resp. Pl.'s SUMF ¶ 7. As defined by the Plan, "covered employment" included "employment by UPS for which UPS . . . agreed with the International Brotherhood of Teamsters to provide pension benefits under the Plan." Pl.'s Resp. Def.'s SUMF ¶ 15 (citing Decl. Michael Weiden Ex. A § 1.9, ECF No. ECF No. 34-4.). The agreement (hereinafter, "CBA") with the International Brother of Teamsters provides that UPS will provide part-time employees with a pension plan and that the plan "will be governed by the terms of the Plan document." *Id.* ¶¶ 16-17. Once contributions are made to the Plan, they are generally irrevocable.[3] *Id.* ¶ 10.

The UPS Pension Plan documents ("Plan documents")[4] explain the Board's role in claims determinations:

> Except as otherwise herein expressly provided, the Trustees shall have the exclusive right to interpret the Plan and decide any matters arising in the administration and operation of the Plan, and any interpretations or decisions so made shall be conclusive and binding on all persons, subject to the Claims

---

[3] The few exceptions to this irrevocability principle include situations where the contribution was made in error and quickly recognized or where the Plan was terminated and overfunded. *See* Pl.'s Resp. Def.'s SUMF ¶ 10; *see also* Decl. Michael Weiden Ex. A § 7.6, ECF No. ECF No. 34-4.

[4] The parties have included various excerpts from the Plan documents in their respective statements of undisputed facts. *See* ECF Nos. 37-1 & 34-2. In addition, the full text is attached to Defendant's Summary Judgment brief. *See* ECF Nos. 34-4, 34-5, 34-6, & 34-7.

> Procedure set forth in Section 11.4; provided, however, that all
> such interpretations and decisions shall be applied in a uniform
> manner to all Employees and beneficiaries similarly situated.

Pl.'s Resp. Def.'s SUMF ¶ 4 (quoting UPS Pension Plan § 11.3, ECF No. 34-4).  Under the

claims procedures of the Plan, the manager of the UPS Corporate Benefits Department

responsible for the day-to-day operation of the Plan is vested with the power to initially

decide pension benefit claims.  *Id.* ¶ 5.  Michael Weiden occupied this role for purposes of

Kane's claim.  *Id.* ¶ 6.  If the manager denies the claim, claimants may appeal to the Board of

Trustees.  *Id.* ¶ 7.  As part of this appeals process, claimants may review any documents,

records, or other pertinent information and submit written comments to the Board.  *Id.* ¶ 8.

The Plan does not mention a second right of appeal or any process for reconsideration of

the Board's decision.  *Id.* ¶ 9.

## II. Plaintiff Gregory Kane's Employment History with UPS

Kane began employment at UPS in 1980 as a part-time employee.  Pl.'s Resp. Def.'s

SUMF ¶ 21.  In 1984, Kane "bid on" a full time package car driver position, and on March

22, 1984, Kane was awarded the position and entered a trial employment period.[5]  Def.'s

Resp. Pl.'s SUMF ¶¶ 15, 17.  Kane successfully completed the trial period, and his full-time

seniority date was recorded as March 22, 1984.[6]  *Id.* ¶ 21.  The Board awarded Kane three

---

[5] The UPS Atlantic Area Supplemental Agreement, an addendum to the CBA, explains the details of the trial period.  After a part-time employee successfully bids on and is awarded a full-time position, the employee must successfully complete a trial period of employment.  Essentially, the employee must work thirty (30) days within a ninety (90) consecutive day period in order to gain full-time seniority.  *See* Def.'s Resp. Pl.'s SUMF ¶¶ 18-20.

[6] However, a letter from the Hagerstown Teamster and Motor Carriers Pension Fund stated that the date of Kane's full-time employment was March 21, 1984.  Def.'s Resp. Pl.'s SUMF ¶ 33.

years of service credit for the hours he worked as a part-time employee.[7]  Pl.'s Resp. Def.'s

SUMF ¶ 22.

Kane's classification as a part- or full-time employee between March 22 and the end

of the trial period is at the heart of the dispute in this case.  At that time, the retirement

benefits of full-time employees were covered by the International Brotherhood of Teamsters

Hagerstown Motor Carriers and Teamsters Pension Plan ("Teamsters Plan") rather than the

UPS Pension Plan.  *Id.* ¶ 32.  Accordingly, Kane was only entitled to service credit under the

UPS Pension Plan if he was a part-time employee during that period.

At various points, the Board communicated the status of Kane's service credit to

Kane.  By a January 13, 2003 letter, the Plan informed Kane that he had three years of

service credit.  *Id.* ¶ 24.  In 2010, Kane received additional communications stating that his

service credit was three years.  *Id.* ¶¶ 28, 29.

### III.    Kane's Claim for Benefits

On December 11, 2010, the Teamsters Plan modified its requirements for pension

eligibility.  *Id.* ¶ 34.  Under these modifications, a participant only received a bonus for 30

years of service if the participant had completed those years of service before February 1,

---

[7] The following table reflects Kane's hours worked and service credit earned between the beginning of his employment with UPS in 1980 and March 22, 1984:

| Year | Hours Worked | Service Credit Earned |
|------|--------------|----------------------|
| 1980 | 173 | 0 |
| 1981 | 911 | 12 |
| 1982 | 1,082 | 12 |
| 1983 | 1,072 | 12 |
| 1984 (through March 22) | 302 | 0 |

*See* Def.'s Resp. Pl.'s SUMF ¶¶ 11-16.

2011.  *Id.*  With only three years of service credit for his part time employment, Kane fell

"three to four months" short of qualifying for the 30 year bonus.  *Id.*  Subsequently, Kane

wrote a letter to the UPS Pension Plan on December 26, 2010, asserting that he had earned

three years and three months of service credit during his tenure as a part-time employee.  *Id.*

¶¶ 35, 38.  The UPS Pension Plan responded on January 24, 2011 and maintained that Kane

had only earned three years of service credit. *Id.* ¶ 38.  Kane appealed the Plan's denial to the

Board and, thereafter, provided additional materials to supplement his earlier filings.  *Id.* ¶¶

39, 40; Def.'s Resp. Pl.'s SUMF ¶ 37.  After reviewing the submitted materials, the Board

ultimately denied the appeal by a June 6, 2011 letter, thereby upholding the decision that

Kane had earned only three years of service credit.[8]

---

[8] The relevant portions of the letter read:

> The essence of your claim is that while you were qualifying as a full-time
> package car driver you should have received Service Credit under the Plan.
> The Trustees disagreed.  The Plan only provides for Service Credit while
> working as a part-time employee and you were not doing so when
> qualifying for the full-time package car driver position.  The Trustees noted
> that even your January 27, 2011 letter acknowledges your full-time seniority
> date of March 22, 1984.  Your status as a part-time employee ended when
> you changed to driving a package car and is not defined by your completion
> of a probationary period.  The Trustees noted that during your
> probationary period you were not working a part-time schedule and you
> were receiving the increased full-time employee pay.  Accordingly, the
> Trustees determined that your Service Credit was properly based on the
> hours you worked prior to your promotion to a full-time employee and that
> such time properly excluded your probationary period as a full-time
> employee.
>
> The Trustees noted further that in your letter to the Plan dated August 21,
> 2007 in which you requested a summary plan description, you stated "I was
> a part-time employee with UPS from October 29, 1980 through March 22,
> 1984 at the UPS facility in 1720."  The Trustees noted that your current
> assertion is inconsistent with what you have said previously.  Additionally,
> on January 13, 2003, the Plan sent you a letter in which it stated that you

On July 11, 2011, Kane wrote the Board again, seeking "reconsideration" of the Board's decision. He attached materials that had not been included in his earlier submissions to the Board—specifically, a note written by UPS Division Manager Bob Inman, who met with Kane near the end of Kane's trial employment period. Pl.'s Resp. Def.'s SUMF ¶ 44. Mike Weiden responded with a July 20, 2011 letter stating that the appeals process had already ended and that no further appeal or reconsideration was available. *Id.* ¶¶ 46, 47.

After this last denial, Plaintiff filed the presently pending action in this Court on December 23, 2011. Plaintiff's Complaint asserted two claims, one for improper denial of benefits under ERISA § 502(a)(1)(B) ("Count I"), and a second for breach of fiduciary duty pursuant to ERISA § 502(a)(2) ("Count II"). On March 12, 2012, the parties stipulated to a voluntary dismissal of Count II without prejudice. *See* Stipulation of Dismissal, ECF No. 5 ("The parties stipulate that Plaintiff dismisses Count II without prejudice to reinstate the claim as if originally filed on December 23, 2011. . . ."). Subsequently, Plaintiff moved to reinstate Count II. *See* Pl.'s Mot. Reinstate Claim, ECF No. 38. This Court denied Kane's Motion by its October 23, 2013 Memorandum Opinion (ECF No. 44) and Order (ECF No. 45). After the close of discovery, the parties filed cross-motions for summary judgment.

---

had earned 3 years of Service credit [sic] and that you became a full-time employee on April 1, 1984. There is no evidence in the record showing you disagreed with the amount of Service Credit you had earned as a part-time employee.

Amended AC 001, ECF No. 20 at 1; *see also* Pl.'s Resp. Def.'s SUMF ¶¶ 41, 42.

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249.

In undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment must be granted. *Anderson*, 477 U.S. at 249-50. On the other hand, a party opposing summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir. 1999). This Court has previously explained that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md. 2001) (citations omitted).

When both parties file motions for summary judgment, as here, the court applies the same standard of review to both motions, with this Court considering "each motion separately on its own merits to determine whether either [side] deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003), cert denied, 540 U.S. 822 (2003); *see also havePower, LLC v. Gen. Elec. Co.*, 256 F. Supp. 2d 402, 406 (D. Md. 2003) (citing 10A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2720 (3d ed. 1983)).

ANALYSIS

By cross-motions, both parties seek summary judgment on Plaintiff Kane's Count I for improper denial of benefits under ERISA § 502(a)(1)(B).[9]  Kane argues that he was improperly classified as a full-time employee during his transition from part-time to full-time employement and, therefore, the Board's denial of benefits on the basis of that classification was unwarranted.  The Board, however, maintains that Kane's classification as a full-time employee was reasonable in light of the factual record before the Board.

I.      **Legal Framework: The Employee Retirement Income Security Act and Participant Claims for Benefits**

Under § 502 of ERISA, retirement plan participants may bring civil actions to recover, enforce, or clarify rights to future benefits under the terms of their retirement plan. 29 U.S.C. § 1132(a)(1)(B).  Where a plan administrator has discretionary authority to make coverage determinations regarding an individual's benefits, a district court reviews the

---

[9] As noted *supra*, Kane's Count II was voluntarily dismissed and his subsequent Motion to Reinstate was denied on both procedural and substantive grounds.

administrator's decision under an abuse of discretion standard.[10]  *Helton v. A.T.&T. Inc.*, 709

F.3d 343, 351 (4th Cir. 2013).  Under this deferential standard, the district court should

uphold the "discretionary decision of a plan administrator if it is the result of a deliberate,

principled reasoning process and is supported by substantial evidence, even if [this Court]

would reach a different decision independently."  *Id.* (internal quotation marks omitted); *see

also Dean v. DaimlerChrysler Life, Disability and Health Care Benefits Program*, No. RDB-09-2992,

2010 WL 3895363, at *4 (D. Md. Sept. 29, 2010) (same).  Substantial evidence is defined as

"the quantum and quality of relevant evidence that is more than a scintilla but less than a

preponderance and that a reasoning mind would accept as sufficient to support a particular

conclusion."  *Donnell v. Metro. Life Ins. Co.*, 165 Fed. App'x 288, 295 (4th Cir. 2006)

(quotation marks omitted).  In the seminal case of *Booth v. Wal-Mart Stores, Inc. Associates

Health & Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000), the Fourth Circuit laid out an

eight factor analytical framework for assessing whether plan administrators had abused their

discretion:

> (1) the language of the plan; (2) the purposes and goals of the
> plan; (3) the adequacy of the materials considered to make the
> decision and the degree to which they support it; (4) whether
> the fiduciary's interpretation was consistent with other
> provisions in the plan and with earlier interpretations of the
> plan; (5) whether the decision-making process was reasoned and
> principled; (6) whether the decision was consistent with the

---

[10] Neither party disputes that the Plan administrators had discretionary authority to determine Kane's benefit eligibility or that the "abuse of discretion" standard is applicable to this case.  *See* Pl.'s Mem. Supp. Mot. Summ. J., at 13, ECF No. 33-1; Def.'s Mem. Supp. Mot. Summ. J., at 14 n.53, ECF No. 34-1.  Moreover, the Plan documents state that "the Trustees shall have the exclusive right to interpret the Plan and decide any matters arising in the administration and operation of the Plan, and any interpretations or decisions so made shall be conclusive and binding on all persons, subject to the Claims Procedure set forth in Section 11.4." UPS Pension Plan § 11.3, ECF No. 34-4; *see also* Pl.'s Resp. Def.'s SUMF ¶ 4."

procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth v. Wal-Mart Stores, Inc. Associates Health & Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000). Recently, in *Helton v. A.T.&T. Inc.*, 709 F.3d 343 (4th Cir. 2013), the Fourth Circuit reiterated the applicability of these factors (commonly known as the *Booth* factors) and noted that not all eight of the factors will be relevant in every case. *Id.* at 357 ("All eight *Booth* factors need not be . . . in play in this case.").

Recently, the U.S. Court of Appeals for the Fourth Circuit clarified the role that evidence outside the administrative record should play in assessing the *Booth* factors and determining the reasonableness of plan administrators' conclusions in ERISA actions. Specifically, in *Helton v. AT&T Inc.*, the Fourth Circuit stated that "a district court may consider evidence outside of the administrative record on abuse of discretion review in an ERISA case when such evidence is necessary to adequately assess the *Booth* factors and the evidence was known to the plan administrator when it rendered its benefits determination." 709 F.3d at 356. Furthermore, under principles of agency law, "an ERISA plan administrator can be charged with [1] knowledge of information acquired by its employees in the scope of their employment and [2] the contents of its books and records." *Id.*

## II.    The Scope of Evidence

As a preliminary matter, this Court must address Kane's request that this Court review extrinsic evidence—i.e., documents not contained in the "Amended Administrative Record" (ECF No. 20). At this stage in the proceeding, Kane has requested that the Court review two separate sets of documents. First, in his Memorandum Supporting his Motion

for Summary Judgment (ECF No. 33-1), Kane seeks the Court's consideration of certain documents presented to the Board after the Board's decision on his appeal—referred to as the Amended Non-Administrative Record throughout the parties' filings.[11]  Second, Kane attempts to supplement his filings with two affidavits by way of a separate Motion to Correct Filing (ECF No. 46).

## A.  Consideration of Documents in the Amended Non-Administrative Record

Kane protests that the Board originally disclosed a more detailed administrative record, but subsequently produced and filed an Amended Administrative Record that omitted documents that were unfavorable to the Board's conclusion.  *See* Pl.'s Mem. Supp. Mot. Summ. J., at 8-9.  The Board defends its actions, stating that the Amended Administrative Record contains only those documents that Kane submitted to the Board before the Board's decision on Kane's appeal; in the Board's view, the documents that Kane submitted when he subsequently sought reconsideration of the Board's determination of his appeal were permissibly excluded.  Def.'s Mem. Supp. Mot. Summ. J., at 25-27.

As discussed above, this Court may consider extrinsic evidence where the information was known by the plan administrators.  Here, the evidence in question includes

---

[11] As explained earlier, Kane submitted a number of documents to the Board during the pendency of his appeal.  After his appeal was denied, he submitted additional documents including a handwritten note by UPS Division Manager Bob Inman note, *see infra*, along with his letter requesting "reconsideration" of the Board's ruling.

According to the parties, the Board initially produced an administrative record that included all of this documentation.  Subsequently, the Board produced a more limited set of documents, referred to as the "Amended Administrative Record," which has been filed with this Court under seal.  *See* ECF No. 20.  The excluded documents, which the parties describe as the "Amended Non-Administrative Record."  The Board appears to have attached these documents as part of its summary judgment filings.  *See* ECF No. 34-12. Further discussion of the administrative record can be found later in this opinion.  *See infra* Part II.A.

(1) the Plan documents, (2) the collective bargaining agreement ("CBA") between UPS and

Kane's union, and (3) a hand-written note and accompanying checklist by Mr. Bob Inman,

the UPS Division Manager during Kane's trial period of employment. With respect to the

Plan Documents and the CBA, there is little question regarding admissibility. These

documents are obviously of the type to be considered even if not included in the

administrative record. *See Helton*, 709 F.3d at 353 (citing *Brooking v. Hartford Life and Acc. Ins.*

*Co.*, 167 Fed. Appx. 544 (6th Cir. 2006), for the proposition that a court may consider plan

documents even when not part of the administrative record).

In addition, this Court should also consider the Inman note. It is undisputed that the

note was stored in Kane's UPS personnel file at the Chambersburg, Pennsylvania UPS

building. Accordingly, taken in the light most favorable to the Kane, the Board may be

charged with knowledge of the note as it was part of the books and records of UPS.[12] *Accord*

*Helton*, 709 F.3d at 356 ("[A]n ERISA plan administrator can be charged with knowledge of

---

[12] Neither party has provided evidence demonstrating the connection between UPS and the UPS Pension Plan Board of Directors. The Plan documents simply define the UPS Pension Plan Board of Trustees as "the persons designated in the Trust Agreement and their successors designated in the manner provided therein, each of whom is a 'named fiduciary' with respect to this Plan" and who "are the Plan Administrator and the agent for service of process on or with respect to the Plan." UPS Pension Plan § 1.45, ECF No. 34-4. Thus, there is some ambiguity whether knowledge of UPS's documents may be imputed to the UPS Pension Plan and the UPS Pension Plan Board of Trustees. *See Helton*, 709 F.3d at 356 (stating that "an ERISA plan administrator can be charged with knowledge of information acquired by *its employees* in the scope of their employment and the contents of its books and records" (emphasis added)).

Nevertheless, the Plan documents also state that "the records of [UPS] with respect to Service Credit, Covered Employment, termination of service, military service, and any and all other matters pertaining to the employment and participation of an Employee in this Plan shall be controlling." UPS Pension Plan § 6.4, ECF No. 34-4. In light of this fact that the Board is bound by UPS's documents, this Court finds that, when viewed in the light most favorable to Kane, knowledge of the Inman note may be imputed to the Board.

information acquired by its employees in the scope of their employment and the contents of its books and records.").

### B. Plaintiff's Motion to Correct Filing

On October 24, 2013, Kane's counsel filed a Motion to Correct Filing in order to amend Kane's summary judgment filings. Specifically, Kane sought to supplement his filings by adding the affidavits of Kane and Robert Fahnestock, the president of Kane's union.[13] Both affidavits are referenced in Kane's Response to Defendant's Statement of Undisputed Facts (ECF No. 37-1). According to the Motion, the affidavits should have been attached to Kane's Responsive Facts but were omitted in error. *See* Pl.'s Mot. Correct Filing, ECF No. 46, at 1. Subsequently, Kane's counsel realized the error and notified the Board's counsel of the error on August 18, 2013 (the day before the Board's Reply was due). *Id.* Kane's counsel, however, took no action until the filing of the Motion to Correct Filing on October 24, 2013.

The Board opposes Kane's Motion, arguing that the affidavits should not be considered as they were not before the Board when Kane's appeal was pending.[14] *See* Def.'s Opp'n Mot. Correct Filing, at 5, ECF No. 47. In response, Kane argues that consideration of the affidavits is proper in light of the expanded extrinsic evidence standard of *Helton*. Specifically, Kane argues that consideration of the affidavits is warranted because the Board

---

[13] In addition to the affidavits, the attachment also contains a few pages from the 1985-1987 Atlantic Area Supplement Agreement. *See* ECF No. 46-2, at 21-23.

[14] In addition, the Board argues that the Motion is untimely; that the affidavits violate this Court's Discovery Order limiting discovery to the issue of the Board's potential conflict of interest; and that the information contained in the affidavits would not have changed the Board's decision. As explained herein, this Court need not address these arguments.

included several documents pertaining to the collective bargaining agreements between UPS and Kane's union as attachments to the Board's Motion for Summary Judgment and the affidavits help to explain the meaning and significance of those documents. *See* Pl.'s Reply, at 2, ECF No. 48 ("Plantiff's affidavit and Fahenstock's affidavits [sic] were submitted in direct response to additional documents that were submitted as part of the administrative record.").

Kane's reading of *Helton* seeks to extend the Fourth Circuit's holding too far. As explained above, *Helton* permits courts to consider documents that are known to plan administrators. *See* 709 F.3d at 356 (permitting consideration of extrinsic evidence where (1) "the evidence was known to the plan administrator when it rendered its benefits determination"; (2) the "information [was] acquired by its employees in the scope of their employment"; or (3) the information was contained in "the contents of its books and records"). The decision does not, however, extend to documents that explain or expound upon information otherwise satisfying the *Helton* requirements. Indeed, this limitation makes good sense in light of the fact that this Court only reviews the Board's conclusion for reasonableness at the time to Board made its decision; whether this Court (or anyone else, for that matter) disagrees with the Board's precise conclusion is of no moment. *See Helton*, 709 F.3d at 351 (stating that a district court should uphold the "discretionary decision of a plan administrator if it is the result of a deliberate, principled reasoning process and is supported by substantial evidence, even if [this Court] would reach a different decision independently").

Here, Kane's documents were never before the Board. Instead, these statements were signed in late July, 2013[15]—over a year after the Board's decision on Kane's appeal—with the admitted purpose of explaining the collective bargaining agreements. Accordingly, these documents do not fall within the *Helton* exception for extrinsic evidence.

Even assuming *arguendo* that the affidavits satisfied the *Helton* standard, they would not change this Court's analysis. With respect to Robert Fahnestock's affidavit, there is no factual information which would have affected the Board's analysis. While Fahnestock asserts that the collective bargaining agreements control the scope of part- and full-time employment, *see, e.g.* Aff. Robert Fahnestock ¶¶ 5-6, ECF No. 46-2, his assertions are legal conclusions that the Board had no obligation to consider or follow.[16] *See* UPS Pension Plan § 11.3, ECF No. 34-4 ("[T]he Trustees shall have the exclusive right to interpret the Plan and decide any matters arising in the administration and operation of the Plan, and any interpretations or decisions so made shall be conclusive and binding on all persons, subject to the Claims Procedure set forth in Section 11.4"); *see also* Pl.'s Resp. Def.'s SUMF ¶ 4. Meanwhile, Kane's affidavit actually demonstrates that he was working in a full-time position

---

[15] Specifically, Fahnestock's affidavit is dated July 27, 2013, while Kane's is dated July 26, 2013.

[16] Additionally, Fahnestock states in his affidavit that, while an employee "is working to attain full-time seniority, [the employee] remains a part-time employee on the part-time seniority list with part-time pension and insurance benefits, and part-time contractual entitlements until the completion of the qualifying thirty in ninety days." Aff. Robert Fahnestock ¶ 12. Fahnestock also states that during the qualifying period the employee will "continue working his part-time position on some days before he qualifies for the full-time position." *Id.* ¶ 13. These statements do not undermine the Board's construction of the Plan or its conclusion that Kane was working full-time during the trial period. As discussed *infra* note 17, Kane has not explained why his other benefits and entitlements should affect the Board's analysis of his pension benefits under the UPS Pension Plan, the controlling document in this matter. Moreover, Fahnestock's statements are consistent with the Board's position that Kane's full-time seniority date—and the beginning of Kane's full-time employment status—was March 22, 1984, effective upon Kane's completion of the trial employment period.

for at least some of the trial employment period. Aff. Gregory Kane ¶ 10 ("During this [trial] period, I did not work in the package driver position every day, but only when there was a need for coverage."). The remaining statements in Kane's affidavit are consistent with the Board's interpretation of the Plan—i.e., that employees in the trial period worked in a full-time capacity and, if they successfully completed the trial period, they were retroactively treated as full-time employees as of the beginning of their trial employment.[17]

## III. *Booth* Factor Analysis

As explained above, this Court must uphold the discretionary decision of a plan administrator "if it is the result of a deliberate, principled reasoning process and is supported by substantial evidence." *Helton*, 709 F.3d at 351. In evaluating the administrator's decision, this Court considers:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision-making process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Id.* at 353 (quoting *Booth*, 201 F.3d at 342-43).

### A. Assessing the Individual *Booth* Factors

---

[17] Specifically, Kane states that it was his understanding that his classification (part- vs. full-time) did not change "immediately" when he was awarded the full-time position as a package car driver, and that he needed "to work 30 days in a full-time position" to qualify for full-time seniority. *Id.* ¶¶ 7-8. Kane also asserts he was receiving "health care benefits from UPS, under the plans for part-time employees." *Id.* ¶ 13. However, nowhere does Kane explain how the UPS Pension Plan is in any way related to or connected with the UPS's health care plan for part-time employees.

### (1) The language of the Plan

The language of the Plan provides no clear distinction between part- and full-time employees. Section 1.17 defines "Employees" covered by the Plan:

> [Employee] means a person who is classified on the payroll of an Employer as an employee of that Employer who (i) is not a participant in or covered under any other qualified pension plan to which his Employer currently makes contributions on his behalf, and (ii) is employed in an area of the United States served by an Employer prior to July 1, 1975, in a capacity in which he is represented for purposes of collective bargaining by a Union, or (iii) is employed and has been so employed for a continuous period of one year in an area of the United States not served by an Employer prior to July 1, 1975, in a capacity similar to that of those classifications of employees employed elsewhere in the United States who are represented for purposes of collective bargaining by a Union, or (iv) is employed by an Employer which has adopted this Plan, with the approval of the Board of Directors, and has agreed to cover the Employee under this Plan and agreed to be bound by the terms and conditions of the Plan and Trust Agreement.

*See* UPS Pension Plan, § 1.17, ECF No. 34-4. The Plan documents do not otherwise define, distinguish, or differentiate between part- and full-time employees.[18]

As the Plan definitions do not shed light on the distinction between part- and full-time employees, Kane points to language in the Atlantic Area Supplement to the National Master United Parcel Service Agreement ("Atlantic Area Supplement") that, in his view, demonstrates employees in the trial employment phase are to be treated as part-time employees for purposes of the Plan. Specifically, the Atlantic Area Supplement states:

---

[18] Kane recognizes this point in his Reply brief (ECF No. 37), stating that the Plan documents do not define part-time employment and do not specify whether the training period is to be credited as part- or full-time employment. *See* Pl.'s Reply, at 5-6.

> A new employee . . . shall be employed only on a thirty (30)
> working day trial basis, during which period he may be
> discharged without further recourse, provided, however, that
> the Employer may not discharge or discipline for the purpose of
> evading this Agreement or discriminating against Union
> members. After working thirty (30) days within a ninety (90)
> consecutive day period, the employee shall be placed on the
> regular seniority list and his seniority date shall be the first day
> worked within any ninety (90) day period of his employment.

Atlantic Area Supplement, Art. 38, § 1 (1984), ECF No. 34-12. Pointing to this passage, Kane argues that an individual employed on a "trial basis" qualifies him as a "temporary worker" akin to a part-time employee. Pl.'s Mem. Supp. Mot. Summ. J., at 15, ECF No. 33-1. Pointing to UPS's broad discretion in discharging him, Kane also asserts that he could not have been a full-time employee because he did not have the same rights and privileges as other full-time employees during his trial period. *Id.* Finally, in his Reply brief (ECF No. 37), Kane cites to Article 54 of the Atlantic Area Supplement, which defines "Part-Time Employees" accordingly:

> Part-time Employees are defined as employees not otherwise
> gainfully employed who, when reporting to work as scheduled,
> shall be guaranteed a minimum of three (3) hours. Should any
> part-time employee work beyond the fifth (5th) hour he shall be
> guaranteed eight (8) hours pay.

UPS Atlantic Area Supplemental Agreement (1982-85) Art. 54, § 1, ECF No. 34-11 at 45.

In opposition, the Board notes that the UPS Pension Plan awards a year of service credit for 750 hours worked, which may be achieved by working just fifteen (15) hours per week. *See* Def.'s Mem. Supp. Mot. Supp. J., at 20. Accordingly, the Board argues that the Plan is geared towards employees working a part-time *schedule*.

After reviewing the parties' arguments, this Court finds that the language of the Plan does not in any way undermine—and, in fact, provides affirmative support for—the Board's conclusion that Kane was a full-time employee during his trial employment period. The Plan itself does not define part- or full-time employment, and both the Plan and the CBA state that the full-time seniority date is the beginning of the trial period. Thus, even though Kane may not have had all the rights and privileges of a full-time employee, the language of the Plan itself favors the Board's interpretation. In addition, the Atlantic Area Supplement defines part-time employment based upon the hours worked—i.e., the employee's schedule. Indeed, to differentiate between part- and full-time work on anything but a temporal basis strains both basic logic and the common meaning of the terms. Therefore, the Board's decision was reasonable in light of the Plan language. *Accord Vaughn v. Celanese Americas Corp.*, No. 3:06-cv-104-FDW, 2007 WL 2875222, at *1 (W.D.N.C. Sept. 27, 2007) (finding that administrator's interpretation of language of the plan was not unreasonable where relevant term was "ambiguous and not otherwise defined" by the plan documents).

### (2) The Purposes and Goals of the Plan

The parties differ slightly on their understanding of the purposes of the Plan. Kane asserts that the Plan's purpose is to provide benefits to part-time employees not otherwise covered by the Teamster Pension Plan. Pl.'s Mem. Supp. Mot. Summ. J., at 15-16 (citing UPS Supplemental Agreement, Amended AC 021, ECF No. 20 at 21). The Board, on the other hand, asserts that the Plan was designed merely to satisfy the requirements of the collective bargaining agreement. Def.'s Mem. Supp. Mot. Summ. J., at 20.

The Court finds this second factor not particularly helpful under the circumstances. Rather than clarifying the difference between part- and full-time employees, the parties' arguments merely reinforce the major question in this case—i.e., how to distinguish between the two employment statuses.[19]

### (3) The Adequacy of the Materials Considered to Make the Decision and the Degree to which They Support the Decision

Kane highlights a number of documents—both included in and excluded from the Amended Administrative Record—that he claims demonstrate the unreasonableness of the Board's decision. From the Amended Record, he cites:

- A January 13, 2003, letter from UPS to Kane. The letter states that Kane's start date as a "full-time union employee" covered by the Teamster Pension Plan was April 1, 1984. A hand-written annotation of unknown origin states that the "date should be 5/1/1984." In addition, the letter states that Kane had earned three (3) years of service credit for his part-time employment. *See* Amended AC 051, ECF No. 20 at 51. Elsewhere in the Amended Administrative Record, copies of the same letter appear without the handwritten notation. *See* Amended AC 048-049, ECF No. 20 at 48-49; Amended AC 073, ECF No. 20 at 73.

---

[19] Kane makes much of the fact that UPS did not make a contribution to the Teamsters Plan on behalf of Kane until May. *See, e.g.,* Pl.'s Mem. Supp. Mot. Summ. J., at 10, 16. Presumably, Kane's argument is that, because there was no contribution, Kane was not covered by the Teamsters Plan and was therefore entitled to service credit under the UPS Pension Plan. This argument misses the mark, as the Board's decision was premised upon the other requirement for UPS Pension Plan eligibility—i.e., status as a part-time employee. Moreover, Kane has failed to make any showing that he was not *entitled* to coverage by the Teamster's Plan during his trial employment period (which would have provided much stronger rationale for including Kane under the UPS Pension Plan).

- A May 25, 2010, letter from the Hagerstown Teamsters and Motor Carriers to UPS. The letter states that Kane earned eight (8) months of vested service in the Teamsters Plan for 1984. Amended AC 055, ECF No. 20, at 55.

- A July 7, 2010, letter from the Hagerstown Teamsters and Motor Carriers to UPS. Following up on the May 25 letter, this letter notes that Kane was a "fulltime employee 3/21/1984," but also points out that contributions to the Teamsters Plan were only made from May through December in 1984. Amended AC 052, ECF No. 20, at 52.

- A December 16, 2010, letter from the Hagerstown Teamsters and Motor Carriers to UPS. This letter states that Kane "began working fulltime as a package driver on March 24, 1984," but also asserts that Kane "would not have attained seniority until May 1984." Amended AC 045, ECF No. 20, at 45.

- A printout from an Employee History Plan Eligibility Calculator. This document lists the "effective date" for Kane's eligibility in the "MEP – Central PA & Teamsters" plan was April 1, 1984. However, the document contains a hand-written annotation that crosses out the line and states "Remove." Amended AR 61. Kane asserts the change was due to the fact that the date was "faulty." Pl.'s Mem. Supp. Mot. Summ. J., at 17.

Pl.'s Mem. Supp. Mot. Summ. J., at 17. Kane's main contention with respect to these documents is that the lack of consensus about the trial period start date should have triggered further investigation by the Board.[20] *See* Pl.'s Mem. Supp. Mot. Summ. J., at 17-18.

---

[20] Specifically, Kane argues:

The minor variations in the date, however, do not render the Board's decision unreasonable. In order to support its conclusion, the Board needed only "the quantum and quality of relevant evidence that is more than a scintilla but less than a preponderance and that a reasoning mind would accept as sufficient to support a particular conclusion." *Donnell v. Metro. Life Ins. Co.*, 165 Fed. App'x 288, 295 (4th Cir. 2006) (quotation marks omitted). Kane repeatedly stated to the Board that his seniority date was March 22, 1984,[21] and that fact is undisputed in this action.[22] Moreover, the Board credited Kane with all of the hours he worked in March, so it is irrelevant whether Kane started his trial period on March 21, 22, 24, or even April 1.[23] Accordingly, this Court finds that the Board had substantial adequate evidence to support its conclusions.

---

Even considering only the Amended Administrative Record, the materials considered by Defendant do not support its decision because the documents present many conflicting dates for the start of Kane's full-time employment. . . . The many different dates hardly support a determination that Kane was a full-time employee throughout April of 1984. It is unreasonable for a plan administrator to pick and choose documents that support its denial of benefits without carefully evaluating the documents that do not support its contentions. The Defendants could not have made a reasonable determination with these documents alone, and the lack of consensus as to Kane's start date should have led Defendants to consider documents from Kane's personnel file from 1984 to assess his employment status at that time.

Pl.'s Mem. Supp. Mot. Summ. J., at 17-18.

[21] January 27, 2011 Letter from Kane to UPS Pension Plan Board of Trustees, Amended AC 006, ECF No. 20, at 6 ("I have . . . a fulltime seniority date of March 22, 1984"); *id.* ("I began a qualifying period as a package driver on March 22, 1984"); August 21, 2007 Letter from Kane to UPS Pension Plan, Amended AC 060, ECF No. 20 at 60 ("I was a part-time employee with UPS from October 29, 1980 through March 22, 1984.").

[22] While these variations between the documents might have raised a concern if this Court were making the original benefits determination, the standard of review in this case is abuse of discretion. *See Helton*, 709 F.3d at 351.

[23] The Board credited Kane with 302 hours of service credit in 1984. *See supra* note 7. The Amended Administrative Record includes the following monthly breakdown for 1984:

In addition, Kane highlights a hand-written note by UPS Division Manager Bob Inman in Kane's UPS personnel file—a document that was not included in the Amended Administrative Record. According to the note, Inman "[r]eceived a commitment from [Kane]," and "welcomed [Kane] to UPS" on May 8, 1984. Amended Non-AC 519-520, ECF No. 34-12, at 21. Inman also noted that Kane would "shortly gain seniority as a [package] car driver." Finally, Inman also stated that he discussed the "benefits" of a full-time employee with Kane. Amended Non-AC 520, ECF No. 34-12 at 22.

The note fails to demonstrate that the Board's decision was unreasonable. The note provides little useful information for distinguishing part- and full-time employees under the Plan. While Kane may not have achieved full-time status until after completion of the trial period, the note does not establish that Kane was a part-time employee. Indeed, even when read in the light most favorable to Kane, the Inman note is still consistent with the Board's position that employees who successfully completed the trial phase were treated as full-time employees for purposes of the Plan. Moreover, to the extent that the note indicates that Kane would not reach full-time seniority until sometime in the future, the note is again consistent with the Board's interpretation. As discussed above, the Plan documents indicate that the full-time seniority date is the beginning of the trial period, effective upon completion of the trial employment. The note reflects a pre-completion discussion with

---

| | |
|---|---|
| January: | 86.33 |
| February: | 91.89 |
| March: | 125.72 |

These three months total 303.94 hours of service credit. The 1.94 hour discrepancy is unexplained, but it has no bearing on the calculation of service credit. Moreover, it is clear that the Board did not stop crediting Kane's hours for purposes of service credit sometime in mid-March.

Kane, and thus Kane had not yet achieved seniority.   Finally, the note does not raise any questions regarding the start date of the trial period.

### (4) Consistency with Other Provisions in the Plan and with Earlier Interpretations of the Plan

The fourth factor favors the Board's conclusion.  There is no indication that the Board has previously construed part-time employment in any other way; indeed, the Board asserts that the only other case raising this issue was decided in the same way.  Decl. Michael Weiden ¶ 5.  Moreover, the Board's interpretation was consistent with its previous determinations of Kane's benefits; all of the Board's communications with Kane indicated that he had not earned any service credit for 1984.

### (5) Reasoned and Principled Decision-Making Process

With respect to the fifth factor, the only new argument raised by Kane is that the Board should not have relied upon or considered the timing of his objection to the calculation of his service credit.  In Kane's view, there was no reason to object to the calculation until the rules for the Teamsters Plan's "30-and-Out" policy changed.  Review of the Board's decision, however, reveals that Kane's previous failure to object was only one of many reasons that Kane's appeal was denied.[24]  *See* Amended AC 001-003, ECF No. 20, at 1-3.  The Board's decision pointed out that Kane worked a full-time schedule and received

_____

[24] Nevertheless, the Board's reliance on Kane's failure to object to the calculation of service credit is relevant, and Kane provides no principled reason why that fact should not have been considered.  Kane was notified in 2003 of the service credit he had earned and was told that he became covered under the Teamsters Plan as of April 1, 1984.  *See* January 13, 2003 Letter from UPS Pension Plan to Kane, ECF No. 20, at 73-74.

full-time pay.[25]  In addition, the Board highlighted Kane's full-time seniority date, which the Board construed as the beginning of Kane's full time employment for purposes of the Plan. The Board's letter laid out the table for calculating service credit, and recalculated Kane's service credit based upon the hours worked. Accordingly, the Board's decision-making process was reasoned and principled.  Therefore, the fifth factor favors the reasonableness of the Board's conclusion.  *Cf. Helton*, 709 F.3d at 351 (stating that plan administrator's decisions should be upheld where the decision was "the result of a deliberate, principled reasoning process and [was] supported by substantial evidence").

### (6) Consistency with the Procedural and Substantive Requirements of ERISA

Kane argues that the Board's decision is inconsistent with section 2530.210(c) of Title 29 of the Code of Federal Regulations.  In Kane's view, § 2530.210 required the Board to credit Kane for the hours he worked in April of 1984.  However, the cited section—§ 2530.210(c)—relates to multiple employer plans, which the UPS Pension Plan is not.[26]

---

[25] The Board has repeatedly pointed out that Kane received full-time pay during his trial employment period. While there is no evidence in the Amended Administrative Record demonstrating Kane's pay, the point has never been disputed by Kane.  (Kane does, however, assert that he received part-time benefits, such as health insurance, in his affidavit.  *See, e.g.,* Aff. Gregory Kane, ECF No. 46-2.)  Nor has Kane offered any evidence that he received only part-time pay.

With respect to Kane's schedule, the Board's decision was supported by monthly records of Kane's hours in the Amended Administrative Record, which demonstrated that Kane's hours increased significantly in March and April (the time of Kane's trial employment).

[26] Nevertheless, Kane argues that section 2530.210(c) applies to plans created pursuant to a collective bargaining agreement.  However, Kane has identified no case support for that argument, and such a reading is counter to a facial reading of the regulation.  None of the other legal authorities identified by Kane indicate any substantive illegality or procedural impropriety by the Board.

Kane also argues that his hours were improperly credited and that the Board was required to maintain records to calculate Kane's hours or have an equivalent method for calculation.  Pl.'s Reply, ECF

### (7) Any External Standard Relevant to the Exercise of Discretion

Neither the parties nor this Court have identified any external standards relevant to this case. Thus, the seventh factor is not relevant in this case.

### (8) The Board's Motives and Potential Conflicts of Interest

The significance of an administrator's conflict of interest varies with the circumstances. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008). In some cases, a conflict may be of greater importance, such as where there is a history of biased claims administration. *Id.* In other situations, however, a conflict may be of less importance— "perhaps to the vanishing point"—where an administrator takes efforts to reduce bias and to promote accuracy. *Id.*

Here, Kane has failed to generate any issue of significant bias. Kane baldly asserts that the Board could not have reached the decision it did absent a conflict of interest. *See* Pl.'s Mem. Supp. Mot. Summ. J., at 20. The undisputed facts, however, do not support this claim. While UPS funds the Plan, the payments are irrevocable and made in advance. Pl.'s Resp. Def.'s SUMF ¶ 10. Accordingly, there is little risk of a conflict of interest. *Accord de Nobel v. Vitro Corp.*, 885 F.2d 1180, 1191 (4th Cir. 1989) (finding no conflict where fully-funded benefit plan is administered by employees of employer but benefits decisions affect

---

No. 37, at 10-14 (citing 29 C.F.R. § 2530.200b-2). However, monthly records of Kane's hours were included in the Amended Administrative Record. *See* Amended AC 064, ECF No. 20 at 64 (showing hours worked for each month in 1984). Kane has failed to demonstrate that the Board's records are deficient as a matter of law in any way.

only the plan and not the employer); *see also Lance v. Retirement Plan of International Paper Co.*, 331 Fed App'x 251 (4th Cir. 2009) (unpublished) (same).[27]

### B. Weighing the Relevant *Booth* Factors

Because the weight of the *Booth* factors favors the Board's position, this Court concludes that the Board did not abuse its discretion in denying Kane additional service credit under the Plan. The language of the Plan does not define part- or full-time employment. The Plan does, however, state that the seniority date for a part-time employee who transfers to a full-time job will be the date of transfer, effective upon the successful completion of the trial employment period. Moreover, there is no evidence of previous, inconsistent rulings by the Board, and Kane has not demonstrated any violation of ERISA or other federal law. Finally, Kane has failed to identify any evidence of a conflict of interest.

The only factor cutting in favor of Kane's position is the third *Booth* factor—the adequacy of the materials reviewed and their value as supporting evidence for the Board's

---

[27] The Board alternatively argues that any possible conflict is immaterial in light of the amounts at stake. Specifically, the Board asserts that the probability of any impropriety is negligible due to the fact that the small amount sought by Kane—merely $20 per month beginning in July 2024—is only a tiny fraction of the Plan's overall assets (equal to $3,332,087,853.89 as of March 2012). *See* Pl.'s Resp. Def.'s SUMF ¶¶ 50, 52. In support of its position, the Board points to *Blankenship v. Metropolitan Life Ins. Co.*, 644 F.3d 1350, 1357 (11th Cir. 2011) (finding no conflict of interest in case where $510,000 claim was denied by administrators of fund of company with $50 billion in yearly revenues). This Court has been unable to identify any comparable binding authority in this Circuit, but at least two (pre-*Glenn*) cases in North Carolina federal courts rejected similar arguments. *See Matos v. Lorillard Tobacco Co. Group Disability Ins. Plan*, 391 F. Supp. 2d 392, 398 n.5 (M.D.N.C. 2005) ("Defendant's argument that Continental Casualty has no conflict of interest because there is little, if any, financial incentive to deny Plaintiff's claim since the amount of money at issue here has 'no appreciable impact on the financial health of Continual Casualty . . .' was [previously] rejected . . . ."); *Boyd v. Liberty Life Assurance Co. of Boston*, 362 F. Supp. 2d 660, 665 (W.D.N.C. 2005) (rejecting argument that there was no conflict of interest where the size of the potential claim was "minute" in comparison to "the size of the company"). This Court sees no need to address the Board's argument on this point in light of this Court's ruling that no conflict exists.

decision.  When the facts are taken in the light most favorable to Kane, it appears that the

Board failed to consider the Inman note.  Even in this light, however, Kane has little ground

on which to stand.  The note merely demonstrates that Kane had not yet finished the trial

period by May 8, 1984, and it does not provide any evidence of the schedule he worked at

that time or how part-time employment should be construed under the Plan documents.

Kane's full-time seniority date was uncontested, and the Board expressly based its decision

on that date.

Thus, the overwhelming indication of the *Booth* factor analysis is that the Board's

conclusion was reasonable under the circumstances.  Accordingly, this Court finds that the

Defendant UPS Pension Plan Board of Trustees did not abuse its discretion in denying

service credit for the hours Plaintiff Kane worked during his trial employment period.

CONCLUSION

For the reasons stated above, Plaintiff Gregory Kane's Motion to Correct Filing

(ECF No. 46) is DENIED.  In addition, Plaintiff Gregory Kane's Motion for Summary

Judgment (ECF No. 33) is DENIED, and Defendant UPS Pension Plan Board of Trustees'

Motion for Summary Judgment (ECF No. 34) is GRANTED.

A separate Order follows.

Dated:          December 11, 2013                          _____/s/_____

                                                          Richard D. Bennett
                                                          United States District Judge